Jacob CANTRELL III by His Next of Friend and Guardian J. C. CANTRELL, Jr. *v.* Charles S. GOLDBERGER, Municipal Judge

CR 74-7                    510 S.W. 2d 546

Opinion delivered June 24, 1974

*Thurman Ragar Jr.,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Jacob Cantrell III, 17 years of age, was arrested in Jefferson County by sheriff's deputies, without a warrant, for possession of marijuana, a misdemeanor. He was never taken before the Juvenile Court of Jefferson County. Instead, he was charged with the offense in the Municipal Court of Pine Bluff. Young Cantrell entered a plea of not guilty and moved that the case be transferred to the Juvenile Court of Jefferson County. In support of his motion, it was asserted that, since Cantrell was arrested without a warrant, the jurisdiction of the juvenile court over him was exclusive until that court transferred the matter to another court. The motion was denied. Thereupon, the minor, by his next friend and guardian, J. C. Cantrell, Jr., petitioned the Circuit Court of Jefferson County for a writ of prohibition to the municipal court restraining and prohibiting that court from proceeding further in the trial of appellant. The writ was denied, and timely appeal was taken.

Ark. Stat. Ann. §§ 45-201 — 45-244 (Repl. 1964 and Supp. 1973) constitutes Chapter 2 of Title 45 dealing with juvenile delinquents and juvenile courts.

Let it first be pointed out that this appeal relates only to minors who are arrested without a warrant, and appellant relies on Ark. Stat. Ann. § 45-224 (Repl. 1964) which provides that where one, under the age of 18 years, is arrested without a warrant, it shall be the duty of the officer making the arrest to take that person directly before the juvenile court of the county, wherein such court, after having given notice as required by the act, will proceed to an examination of the case, determining whether the minor is a dependent or delinquent child, or, within his discretion, the judge of the juvenile court may dismiss the cause and transfer the minor to any of the courts having jurisdiction of the offense of which the minor may be found guilty. A proper determination of the

intent of the General Assembly requires that all of the provisions of the act be read together, and when this is done, we are of the view that appellant's argument must fail. Ark. Stat. Ann. § 45-240, we think, makes it clear that the legislature did not intend, and did not grant, exclusive authority in the juvenile (county) court in matters relating to the arrest of persons under 18 years of age without a warrant. That section provides:

> "Nothing in this act shall be construed to be in conflict (with) or to repeal or to prevent proceedings under any act or statute of this State which may have otherwise defined any specific act of any person as a crime or misdemeanor of any character, which act might also constitute contributory delinquency or contributory dependency, or to prevent or to interfere with proceedings under any such acts, *** "

We have no Arkansas cases interpreting this section, but the United States District Court for the Eastern District of Arkansas, Western Division, had occasion to mention the same contention in the case of *Pritchard, et al* v. *Downie,* 216 F. Supp. 621. There, the late District Judge, Gordon E. Young, a highly respected jurist, after citing the statute, said:

> "The plaintiffs contend that this statute requires that minors be taken to the juvenile court instantly and always. I have considerable doubt as to the efficacy of this position. Section 45-240 of the Arkansas Statutes provides that nothing in this act (which includes 45-224) will affect or prevent 'proceedings under any act or statute of this State which may have otherwise defined any specific act of any person as a crime or misdemeanor of any character, which act might also constitute contributory delinquency or contributory dependency, or to prevent or to interfere with proceedings under any such acts, * * *.' It appears from this statute that the officers may elect as to the manner in which they are to proceed; i.e., whether the child should be taken before the juvenile court as a delinquent or charged in criminal court under a separate crime or misdemeanor. The record reflects that this has been the

customary practice of the Little Rock police under these statutes."

While this was not the controlling point in the litigation there at issue, we agree with the reasoning of that court. After all, the 17 year old minor in this case was not charged with being a delinquent; rather, he was charged with a specific offense, the possession of marijuana, and the municipal court had jurisdiction over the accused and the alleged offense with which he is charged.

Although we think that § 45-240 disposes of appellant's contention, as a matter of further showing the intent of the General Assembly in passing the original act[1], and amending it from time to time, other matters should be mentioned. Under the view advanced by appellant, who contends that an arrested juvenile must be taken "directly before the juvenile court", procedure to be followed would become rather confusing and complicated, and in fact, some of the pertinent provisions would be in conflict.

Ark. Stat. Ann. § 45-202.1 (Supp. 1973) grants county judges authority to appoint referees who are authorized to pass on all juvenile cases.[2] However, the next section, 45-202.2, provides that appeals may be taken to the judge of the

[1] The act was upheld in *Ex Parte King,* 141 Ark. 213, 217 S.W. 465, where we pointed out that the court was properly termed the "county court", and stated:

"The second section of the act provides: 'The county courts of the several counties of the State shall have original jurisdiction in all cases coming within the terms of this act. All trials under this act shall be by the court without a jury.'

"Section 3 of the act provides as follows: 'The findings of the court shall be entered in a book or books to be kept for that purpose, and known as the "Juvenile Record" and the court may, for convenience, be called "The Juvenile Court".' * * *

"We need not analyze the various provisions of the act. Suffice it to say when they are all considered, as they must be, and given their proper construction in relation to each other, it was not the intention of the Legislature to create a separate and independent tribunal and vest it with certain functions and powers, but rather to place within the jurisdiction and power of the county court, in the manner provided in the act, the subject-matter of the disposition of minors, who, for purposes of the act, are considered wards of the State. * * *

"The third section, while designating the court as the 'Juvenile Court' and its record as the 'Juvenile Record,' expressly declares that this is done 'for convenience'."

[2] According to the Eighth Annual Report of the Judicial Department of Arkansas, 1972 Judicial Statistics, referees handle juvenile cases in about one-third of Arkansas counties.

juvenile court from the decision of the referee by causing the papers to be lodged with the judge of that court within ten days after a decision is made. It, of course, is at once apparent that this section is in conflict with § 45-224, which, as heretofore stated, provides that after the minor is taken directly before the county court, such court may either determine that the minor is a dependent or delinquent child, or may transfer such person to any of the courts having jurisdiction of the offense. In other words, it clearly appears that the General Assembly has not explicitly required, nor intended, that the minor be taken directly before the county judge, else there would be no reason for a section providing an appeal from the decision of the referee to the county court. Certainly, it cannot be said that § 45-202.1 simply permits the referee to act in the place of the juvenile court. Suppose that one is arrested without a warrant and taken before the referee, and after a hearing, the latter decides that the minor should be transferred to the municipal court. While the juvenile judge, under the section relied upon by appellant, would have this right to transfer, the referee would not, for § 45-202.2 gives the minor the right to appeal from the referee's decision to the judge of the juvenile court.

At any rate, the procedure outlined seems unnecessary, since both the circuit court and the municipal court have the authority, when a juvenile is brought before their respective tribunals, to, if they deem it proper, transfer the case to juvenile court for disposition; accordingly, the person whose case should be adjudicated by the county judge or the juvenile referee is not deprived of that right under our present law.

Affirmed.

BROWN and FOGLEMAN. JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I would probably join in the majority opinion if it were within the province of this court to make a policy decision. I certainly would, if I could find it possible to read the English language as the majority reads it in applying Ark. Stat. Ann. § 45-240 (Repl. 1964). But I find neither of these alternatives possible. The General Assembly has eliminated the possibility of a

policy decision, even if it were otherwise in the jurisdiction of the judicial department. I am simply unable to understand how § 45-240 can be read to have the effect given it by the majority without emasculating it. In order to do so, this particular section must be read with a vision so peculiarly astigmatic that a whole limiting and qualifying clause printed in virtually two full lines in the official 1911 Acts of Arkansas, more than a full line in Ark. Stat. Ann. and nearly two lines in the majority opinion is totally obscured. In order to apply the section as the majority has, it must be read:

> Nothing in this act shall be construed to be in conflict (with) or to repeal or to prevent proceedings under any act or statute of this State which may have otherwise defined any specific act of any person as a crime or misdemeanor of any character, **** or to prevent or to interfere with proceedings under any such acts, ****

The omission is that which clearly makes the section inapplicable here. The clause omitted is ". . . which act might also constitute contributory delinquency or contributory dependency . . ."

If there could be any lingering doubt about the effect to be given these limiting and qualifying words and their inconsistency with the application of the statute made by the majority it should be totally dispelled by a reading of the remainder of the section. Those words clearly indicate that the type of offenses which might be described as *contributory* delinquency or *contributory* dependency were the only ones intended to be treated by that section of the act. The remainder of the section not quoted in the majority opinion follows:

> **** nor shall it be construed to be inconsistent with or to repeal any act providing for the support of the parent, or parents of their minor children, or any act providing for the punishment or cruelty to children or the taking of indecent liberties with, or selling whiskey, tobacco or firearms to children, or permitting them in evil or disreputable places, and nothing in any such act or similar acts shall be construed to be inconsistent with or repeal this act or prevent proceeding hereunder, but in all cases

where there shall be more than one prosecution for the same offense under whatever acts of the character herein described, the fact may be given in evidence to the judge of the court and may be in the discretion of the court considered in mitigation of any sentence in any such cases.

In order to properly view the matter, the provisions of Act 215 of 1911, now appearing as Ark. Stat. Ann. §§ 45-201—206, 45-209—216, 45-218, 45-220—225, 45-227—240 (Repl. 1964 and Supp. 1973) must be looked to. There the General Assembly was attempting to deal effectively with what was then, and is now, a difficult and perplexing social problem—the proper handling of minors who are either actual or potential offenders against the law and society. It was the first effort made in this state to treat the problem comprehensively. The plan adopted was in accord with a prevailing national trend. See Maxted, Some Problems of Courts for Arkansas, 9 Ark. L. Rev. 23. See also, McDonough, The Juvenile Court and Judicial Reform in Arkansas, 22 Ark. L. Rev. 17. It then was widely accepted and approved as a progressive move. It was first tested in *Ex parte King,* 141 Ark. 213, 217 S.W. 465. In that opinion this court mirrored the prevailing mood of the day, saying:

The progressive and enlightened policy of such legislation is everywhere recognized and commended. Happily for the unfortunate class benefited and for the public weal we find no barrier in our organic law to the act in its present form.

It then behooves us to ascertain the "unfortunate class benefited." The very first section of the act makes all under the age of 18 years, for the purposes of the act, wards of the state, whose persons were made subject to the guardianship and *control* of the county court, sitting under the pseudonym, juvenile court. Ark. Stat. Ann. §§ 45-201 (Supp. 1973), 45-206, 45-202 (Repl. 1964). *Ex parte King,* supra. The act then undertakes to define the particular class benefited. It consists of dependent children, neglected children and delinquent children. Insofar as this case is concerned, we need only to look to the definition of the words "delinquent child" to

determine whether appellant might be in that category. The definition includes any child under the age of 18 years who commits any act for which he might be prosecuted for a felony or misdemeanor if he were over 18. Appellant is in that class, if guilty. Ark. Stat. Ann. § 45-204 (Supp. 1973).

It was clearly the intention of the legislature to place within the jurisdiction and power of the county court (for convenience called the juvenile court), in the manner provided in the act, the disposition of minors, who are considered as wards of the state, i.e., under the age of 18 years. Ark. Stat. Ann. § 45-201, 45-209 (Repl. 1964). *Ex parte King,* supra. That jurisdiction extends to "all cases coming within the terms of the act." Ark. Stat. Ann. § 45-206. The act explicitly requires a liberal construction, to the end that, in case of delinquency, as far as practicable any delinquent child shall be treated, not as a criminal, but as misdirected and misguided and needing aid, encouragement and assistance, and if such child cannot be properly cared for and corrected in his own home or with the help and assistance of probation officers, then he may be placed in a suitable institution where he may be helped and educated and equipped for industrial efficiency and useful citizenship. Ark. Stat. Ann. § 45-233 (Repl. 1964). *Ex parte King,* supra. It was not the intention of the act to confer upon the county court the power to institute criminal prosecutions against minors or to punish for alleged violations of law. It did undertake reclamation and reformation, rather than condemnation and punishment and to open the doors of an asylum rather than a jail. Through it, the state, as parens patriae, assumes the guardianship of her minors who are under the age of 18 because they come within the terms of the act and need her protection. *Ex parte King,* supra. The jurisdiction over infants under 18 and their guardianship, so far as their conduct might affect the welfare of the community in which they reside, or are found, is vested in the county court, as a local concern of the county. *Ex parte King,* supra.

The act, however, did not automatically vest that court with exclusive jurisdiction in every case in which a violation of a state law is involved or alleged. It did not give jurisdiction to the county court over a minor under 18 against whom prosecution has been commenced in a manner which requires

his arrest upon a warrant issued out of any court in this state. Ark. Stat. Ann. § 45-224 (Repl. 1964). When, however, a child under the age of 18 years is arrested *without a warrant,* it *shall* be the *duty* of the arresting officer to take him directly before the juvenile court. That court then may either exercise its discretion to transfer the child to any of the courts of this state having jurisdiction of the offense of which he may be found guilty, or proceed under the provisions of the act for reclamation and reformation of wayward youth. Ark. Stat. Ann. § 45-224. The language of the act as to the minor who may be arrested without a warrant is clearly mandatory.[1] If it had not been so intended, the word "may" rather than "shall" would have been used. A reading of this section (and other statutes) evinces a clear legislative intention that a court acting through a judicial officer, not an arresting officer, make the determination, in the exercise of judicial discretion, whether a youthful law violator should be prosecuted in the criminal courts as an adult would be, with the attendant publicity, the risk that he be imprisoned as an adult with adult offenders, the possibility of evidence in the proceeding being used against him in other proceedings and the resulting criminal record. If the minor is arrested without a warrant, that discretion is to be exercised by the juvenile court, but when arrested on a warrant, by the court from which the warrant issued, or which has jurisdiction by virtue of a charge filed therein.[2] Ark. Stat. Ann. §§ 45-224, 241 (Repl. 1964).

The argument, that Ark. Stat. Ann. § 45-240 (Repl. 1964) makes proceedings against appellant in the municipal court permissible in spite of the fact that he was arrested without a warrant and never taken before the juvenile court, is based upon a misreading of the section. Whatever its effect may be, insofar as this argument is concerned, it is simply a disclaimer of any intention to repeal any act or prevent any

[1] I am not unaware of contrary *dictum* in *Pritchard* v. *Downie,* 216 F. Supp. 621 (D.C. 1963). I simply do not agree with the conclusion stated by the late distinguished trial judge who wrote that opinion.

[2] Arkansas Statutes Annotated § 45-241 (Repl. 1964) was the only statute invoked in the motion to transfer in *Stanley* v. *State,* 248 Ark. 787, 454 S.W. 2d 72. The motion did not mention Ark. Stat. Ann. § 45-224, nor was there any allegation or evidence in support of the motion to indicate that Stanley was arrested without a warrant or prior to the filing of the information against him. No jurisdictional question was asserted in the motion in any manner. The motion simply asked the circuit court to transfer the case to the juvenile court in the minor's best interest.

proceedings defining as a crime or misdemeanor an act which might also constitute contributory delinquency or contributory dependency.

I have desperately but unsuccessfully tried to fathom the reasoning by which the majority is persuaded that Ark. Stat. Ann. 45-202.1, 202.2 (Supp. 1973) adopted 58 years later than the basic act, has any bearing whatever on the question before the court. Assuming that the latter sections are constitutional, the referee is at best an arm of the county court in the exercise of that court's jurisdiction. Clearly, there was no legislative intent to create a new court. If so, the act is palpably unconstitutional. Furthermore, I cannot read these sections as the majority does. I do not see why the referee is not authorized to act in these cases as fully as he could in any other, if indeed the General Assembly can vest a referee with such broad powers as it has attempted by these sections. Ark. Stat. Ann. § 45-202.1 clearly states that the referee ". . . shall have power to hear and pass on all Juvenile cases . . ."

The courts have no power to inquire into the wisdom, advisability, expediency or propriety of this legislative determination of this matter which was solely for consideration of the legislative department. *Ward* v. *Bailey,* 198 Ark. 27, 127 S.W. 2d 272; *Albright* v. *Karston,* 206 Ark. 307, 176 S.W. 2d 421; *Reed* v. *Hundley,* 208 Ark. 924, 188 S.W. 2d 117; *Fugett* v. *State,* 208 Ark. 979, 188 S.W. 2d 641; *Cook* v. *Arkansas-Missouri Power Corp.,* 209 Ark. 750, 192 S.W. 2d 210; *Longstreth* v. *Cook,* 215 Ark. 72, 220 S.W. 2d 443; *Beaumont* v. *Faubus,* 239 Ark. 801, 394 S.W. 2d 478.

I would reverse the judgment denying the writ of prohibition and direct the Circuit Court of Jefferson County to issue the writ.

I am authorized to state that Mr. Justice Brown joins in this dissent.