Sylvester WILKINS et al. *v.* STATE of Arkansas

CR 87-14                                    731 S.W.2d 775

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Addie Burks*, for defendant Sylvester Wilkins.

*Brett B. Stein*, for defendant Charles Webster Smith.

*Thomas B. Montgomery*, for defendant Victor Lind Johnson.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Appellants were convicted of aggravated robbery. Charles Webster Smith and Victor Lind Johnson were each sentenced to 99 years imprisonment and Sylvester Wilkins was sentenced to 25 years. Appellants raise numerous arguments for reversal, all of which are meritless.

On May 10, 1986, Barbara and Glen Phelps stopped at a rest area on Interstate 40, west of West Memphis, at approximately 3:30 a.m. When they went to the restroom, they noticed a black man wandering around. Phelps entered the men's room and went to the last stall. He heard someone say "hey." He looked over the partition and saw a black man with a gun aimed at him, demanding his money. When Phelps refused, he was shot in the collarbone. Phelps then threw his billfold under the door. Phelps got his wife and they drove to the weigh station to report the incident. Phelps was then taken to the hospital.

Unfortunately for the appellants, an Arkansas State policeman, Lt. Bobby Hambrick, driving an unmarked car, pulled into the same rest area near West Memphis about the time this incident occurred. He saw a dark colored Mercury without license plates parked. After a few minutes, the car left hurriedly without any lights on. Lt. Hambrick followed. The speeding vehicle turned its lights on when it reached the interstate, crossed the median and headed toward West Memphis at a speed of 75 m.p.h. Hambrick pulled the car over and the three appellants were in the car. The driver, Sylvester Wilkins was arrested for speeding, crossing the median and no driver's license and put in the officer's car. A trucker stopped to tell Hambrick there had been a shooting at the rest area. The car was locked, and the other two appellants said they would walk to West Memphis. On the way to the sheriff's office with Wilkins, Hambrick received a radio dispatch and returned to the car.

A deputy sheriff on patrol learned there had been a shooting

at the rest area and went to the nearby weigh station and obtained a description of the assailants from the victim and his wife. He returned to the rest area, found no evidence and learned that a blue Mercury had been left on the interstate and two individuals from the car were walking toward West Memphis. He drove to the vehicle, heard an explosion, and then saw two males between his vehicle and the Mercury. The car's back window had been broken out with a large chunk of concrete. The victim's brown billfold was found on the back floorboard. The gun used in the shooting was found 15 feet away. Appellants Johnson and Smith were then arrested. In their statements, appellants admitted they were at the rest area.

All three appellants were taken to the hospital where Mr. Phelps identified Smith as his assailant. Mrs. Phelps identified Johnson at trial as the man she and her husband saw standing outside the rest area. None of the appellants testified at the trial. They all had prior felony convictions.

First, appellants argue that the trial judge erred in ruling that Johnson could be cross-examined about his prior convictions. This is not preserved for appeal because the requirements of *Simmons v. State*, 278 Ark. 305, 645 S.W.2d 680 (1983), were not met. Johnson did not assert that he would testify and made no record of what his testimony would be.

Second, appellants argue they were prejudiced because they were limited to eight peremptory challenges instead of eight each. We have rejected this argument several times. *Clines v. State*, 280 Ark. 77, 656 S.W.2d 684 (1983). As evidence of the necessity for the additional challenges, appellants point to two jurors who would have been challenged if the appellants had not already exhausted their peremptory challenges. The juror, L.G. Stevens, owned a liquor store which had been robbed four times. He was challenged for cause and the trial court denied the motion. The second juror the appellants wanted excused was Deborah Brown. After hearing part of the testimony, Brown remembered that her husband, a part-time emergency medical technician, had worked this particular shooting incident. He told her there had been a shooting at the rest area. The trial court denied her submission for cause.

Both jurors were questioned extensively by appellants'

counsel and by the trial court. The trial court determined that the jurors were not biased. Both jurors assured the judge that their situations would not influence their decision; their decision would be based on the evidence. We cannot say that the trial judge abused his discretion. See *Swindler v. State*, 267 Ark. 418, 592 S.W.2d 91 (1979).

■ Third, the trial court refused to allow the balance of Johnson's statement read to the jury after a policeman read an excerpt. The trial judge excluded the parts of Johnson's statement which would have incriminated the other appellants. This procedure is correct. *Bruton v. U.S.*, 391 U.S. 123 (1968); *Mosby v. State*, 246 Ark. 963, 440 S.W.2d 230 (1969); *Grooms v. State*, 251 Ark. 374, 472 S.W.2d 724 (1971).

■■ Fourth, Johnson argues there was insufficient evidence to support his conviction. He argues that his identification as the man outside the rest room was insufficient as a matter of law. On appeal we review the evidence in a light most favorable to the appellee. *Birchett v. State*, 289 Ark. 16, 708 S.W.2d 625 (1986). Mrs. Phelps identified Johnson at trial. Discrepancies in testimony and the credibility of witnesses are for the jury to resolve. *Williams v. State*, 289 Ark. 69, 709 S.W.2d 80 (1986); *Taylor v. State*, 288 Ark. 456, 706 S.W.2d 384 (1986).

In addition to the identification, Johnson was in the back seat of the vehicle when Wilkins was arrested. The billfold was found on the floor there. He was with Smith when the car window was broken out. The gun used in the robbery was found nearby. There was substantial evidence to support his conviction.

■■ Fifth, the appellants argue that their cases should have been severed. A trial court has discretion in this matter and will only be reversed for an abuse of that discretion. *McDaniel v. State*, 278 Ark. 631, 648 S.W.2d 57 (1983). In *McDaniel*, we set out the factors to be considered in determining whether or not severance should be granted: (1) where defenses are antagonistic; (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal

record and the other has; and (7) where circumstantial evidence against one defendant appears stronger than against the other.

In this case the defenses were not antagonistic, because there were no defenses. All of the appellants decided not to testify. Most of the evidence applied to all of the appellants, and they all took part in the robbery; one driving the car, one outside looking around, and one inside the rest room. They all left together in the speeding darkened car. When stopped, Wilkins lied about his name. The other two broke into the car. The police found the billfold in the car and the gun used in the robbery nearby. There is no evidence that one appellant deprived the other of peremptory challenges. All three appellants chose not to testify. All had prior felony convictions. Considering all these circumstances, we cannot say the trial judge abused his discretion in allowing the appellants to be tried at one trial.

Sixth, Wilkins argues there was insufficient evidence to convict him. The car he was driving was stopped soon after he sped from the scene of the robbery without headlights on. He lied about his name. He admitted being at the rest area with two other black males. Considering the evidence we have outlined, there is substantial evidence to support the conviction.

Seventh, Smith argues his identification by Mr. Phelps at the hospital should have been suppressed. This question is always one of reliability. *James* v. *State*, 270 Ark. 596, 605 S.W.2d 448 (1980). In this case the officers thought Phelps might die, and they had to promptly see if the victim could identify any of these appellants as his assailant. Appellants were shown to Phelps one at a time. The identification was approximately 30 to 45 minutes after the shooting. The trial court correctly admitted the identification.

Smith also argues that he was not advised of his right to an attorney at the showup. A defendant is not entitled to have an attorney present at a showup. *Kirby* v. *Illinois*, 406 U.S. 682 (1972); *Lewis* v. *State*, 281 Ark. 217, 663 S.W.2d 177 (1984).

Affirmed.